UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TRANSCONTINENTAL INSURANCE CO., CONTINENTAL CASUALTY COMPANY, and AMERICAN CASUALTY COMPANY OF READING, PA, | Civil No. 04-5125 (PJS/JJG) |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND ON |
| v. | DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| STOCK ROOFING, INC., and INNSBRUCK VILLAGE ASSOCIATION, | |
| Defendants. | |

Matthew Wildermuth, MECKLER BULGER & TILSON, LLP, 123 N. Wacker Drive, Suite 1800, Chicago, IL 60606, for plaintiffs.

Debra M. Newel, THOMSEN & NYBEK, PA, 3300 Edinborough Way, Suite 600, Edina, MN 55435, for defendant Innsbruck Village Association.

This is a declaratory judgment action brought by plaintiffs Transcontinental Insurance Company, Continental Casualty Company, and American Casualty Company of Reading, Pennsylvania (collectively "insurers") against defendants Stock Roofing, Inc. ("Stock Roofing") and Innsbruck Village Association ("Innsbruck Village"). Before the Court are cross-motions for summary judgment, both of which are somewhat unusual. The insurers ask the Court to grant summary judgment on a claim that is not contained in their complaint. In return, Innsbruck Village asks the Court to rule, in the abstract, that the policies issued by the insurers cover what they cover and do not cover what they do not cover — something that the insurers quite naturally

do not dispute. The Court will deny both motions and, because this action is moot, dismiss it for lack of subject-matter jurisdiction.

## I.  BACKGROUND

Innsbruck Village is an unincorporated homeowners association that oversees a complex of 92 townhouse units in Fridley, Minnesota. Stafford Aff. Ex. D at 2, Apr. 24, 2006. The owners of those townhouses have been experiencing problems with leaking roofs for many years. Stafford Aff. Ex. 2, May 17, 2006. In 1991, Innsbruck Village hired Stock Roofing to replace some roofs completely, to make repairs to other roofs, and to remove snow and ice buildup from flat roofs. Stock Dep. 53-54. Stock Roofing and several other roofing and repair companies have been working on the roofs in the Innsbruck Village complex for almost 15 years now, and yet the roofs continue to leak.

In 2002, Innsbruck Village brought suit against Stock Roofing in a Minnesota state court[1] to recover for damage to roofs and for damage to portions of units that have been ruined by water seepage and collapsing roof structures. Stock Roofing tendered the lawsuit to the insurers, and the insurers agreed to defend Stock Roofing under a reservation of rights. Stafford Aff. Ex. C, Apr. 24, 2006.

On December 30, 2004, while the Minnesota action was still pending, the insurers filed this declaratory judgment action against Stock Roofing and Innsbruck Village. In their complaint, the insurers asked this Court to declare that, under the terms of the applicable policies, the insurers were not required to cover some or all of the damages sought by Innsbruck

---

[1]The case was filed in Minnesota State Court, County of Hennepin, Fourth Judicial District, as *Innsbruck Village Ass'n v. Stock Roofing, Inc.*, Court File No. CT 03-10042.

Village in the Minnesota action against Stock Roofing. Second Am. Compl. ¶¶ 29, 34, 41, 51. For example, the insurers alleged that some of Innsbruck Village's claims against Stock Roofing did not involve "property damage" arising out of an "occurrence," as those terms were defined in the policy. *Id.* at ¶ 29.

In the spring of 2005, the parties to the Minnesota action and the insurers began settlement discussions. *See* Stafford Aff. Ex. A, Apr. 24, 2006. The insurers offered $50,000 to Innsbruck Village to settle its claims against Stock Roofing. *Id.* Innsbruck Village rejected the offer, and the settlement negotiations came to a standstill. *Id.* Stock Roofing and Innsbruck Village then began to discuss the possibility of reaching a *Miller-Shugart* settlement. *See Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982).

A *Miller-Shugart* settlement is a rather unusual animal, much beloved by plaintiffs and insureds, and not at all beloved by insurers. Under a *Miller-Shugart* settlement, the defendant agrees that a stipulated judgment in a particular amount may be entered in favor of the plaintiff. In return, the plaintiff agrees not to attempt to collect the stipulated judgment from the defendant itself, but only from the defendant's insurers. The defendant essentially drops out of the litigation (it no longer has a stake in the outcome), and the plaintiff takes on the defendant's insurers.

To collect the stipulated judgment from the insurers, the plaintiff must show that the stipulated judgment was not the product of fraud or collusion, that the amount of the stipulated judgment was reasonable, and that the stipulated judgment was within the coverage of the policies. *Miller*, 316 N.W.2d at 732-35. The plaintiff must also show that the defendant did not violate the cooperation clause of its insurance policies by entering into the *Miller-Shugart*

settlement. *Id.* at 733.  Such a violation generally lets the insurers off the hook, and results in the plaintiff collecting nothing from either the defendant or the defendant's insurers.  *See Buysse v. Baumann-Furrie & Co.*, 481 N.W.2d 27, 29 (Minn. 1992) (*Buysse II*); *Steen v. Those Underwriters at Lloyds*, 442 N.W.2d 158, 164 (Minn. Ct. App. 1989).

Stock Roofing and Innsbruck Village eventually entered into a *Miller-Shugart* agreement.  Stafford Aff. Ex. H, Apr. 24, 2006.  Under that agreement, Stock Roofing consented to entry of a $255,000 judgment against it and in favor of Innsbruck Village, and Innsbruck Village agreed not to collect that judgment from Stock Roofing but only from the insurers.  *Id.*  The stipulated judgment was entered against Stock Roofing on June 3, 2005.  *Id.* at Ex. G.

Innsbruck Village had several options for attempting to collect the stipulated judgment from Stock Roofing's insurers.  For example, it could have filed a counterclaim in this action, or filed a separate action against the insurers in state or federal court.  But Innsbruck Village elected to attempt to collect the judgment against the insurers by moving for leave to serve a supplemental complaint in the Minnesota action in order to garnish the policies that the insurers had issued to Stock Roofing.  Stafford Aff. Ex. I, Apr. 24, 2006.  In connection with that motion, the parties fully briefed the question of whether the *Miller-Shugart* settlement was enforceable against the insurers.

Judge John Q. McShane denied the motion in an order and opinion entered on November 8, 2005.  *Id.* at Ex. A.  Judge McShane first found "probable cause" to believe that Innsbruck Village could establish three of the elements necessary to recover on a *Miller-Shugart* agreement: absence of fraud or collusion, reasonableness, and coverage.  But Judge McShane held that the *Miller-Shugart* agreement was nevertheless unenforceable:

> [Innsbruck Village] seeks to enforce a *Miller-Shugart* settlement it reached with defendant Stock. They cannot do this. The *Miller-Shugart* settlement is unenforceable because the settlement must have taken place during a period of time when the insurer denied all coverage to the insured in order for it to be enforceable against the insurer . . . . Stock's liability insurer never declined to indemnify Stock against liability arising from the Innsbruck suit.

*Id.* at 3. Judge McShane relied heavily on Justice Simonett's partial dissent in *Economy First & Casualty Co. v. Iverson*, 445 N.W.2d 824 (Minn. 1989), which argued that a defendant had violated the cooperation clause of his insurance policy by entering into a *Miller-Shugart* settlement when coverage was not in dispute. *Id.* at 828-29 (citing *Sargent v. Johnson*, 551 F.2d 221 (8th Cir. 1977)).

On December 12, 2005, Innsbruck Village sought Judge McShane's permission to move for reconsideration of his November 8, 2005 order. Stafford Aff. Ex. 9 at 1, May 17, 2006. Judge McShane denied that request. *Id.* at 5. Innsbruck Village appealed. McGee Aff. Ex. I, Apr. 19, 2006. The appeal is pending in the Minnesota Court of Appeals; no date for oral argument has been set.

## II. ANALYSIS

Both the insurers and Innsbruck Village now move this Court for summary judgment. The purpose of the insurers' motion is clear: The insurers want this Court to declare that, because the *Miller-Shugart* agreement was held unenforceable in the Minnesota action, and because that holding binds Innsbruck Village under the doctrine of collateral estoppel, the insurers are not liable on the policies that they issued to Stock Roofing. For reasons that will be described below, though, the insurers' motion creates procedural difficulties.

The purpose of Innsbruck Village's motion is not clear. Innsbruck Village concedes that this Court cannot enter a judgment on its behalf. Even putting aside the fact that its *Miller-*

*Shugart* agreement has been declared unenforceable, Innsbruck Village cannot recover a dime from the insurers unless it first proves lack of fraud or collusion, reasonableness, and coverage. The reasonableness inquiry in particular would be arduous and complex; both sides would undoubtedly have to present a great deal of testimony and other evidence.

So what does Innsbruck Village seek? As best as the Court can tell, Innsbruck Village wants the Court to issue a rather abstract declaration that the insurance policies provide coverage to the extent that they provide coverage. This, of course, is a matter to which the insurers readily agree: Their policies provide coverage of what they cover, and they do not provide coverage of what they do not cover. More importantly, this is also a matter that is irrelevant if, as Judge McShane held, the *Miller-Shugart* settlement is unenforceable. If Stock Roofing violated the cooperation clause of its policies, then Innsbruck Village cannot recover anything from the insurers, no matter the scope of coverage.

After puzzling over these motions, the Court has determined that they should be denied and this lawsuit dismissed as moot.

*A. Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could . . . return a verdict for [the non-movant]." *Baucom*

*v. Holiday Cos.*, 428 F.3d 764, 766 (8th Cir. 2005).  In considering a motion for summary judgment, a court must resolve factual disputes in favor of the nonmoving party, *see Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987), and "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B.  Collateral Estoppel

The insurers assert that, under the doctrine of collateral estoppel, Innsbruck Village is foreclosed from arguing that the insurers have any obligation to Stock Roofing and thus derivatively to Innsbruck Village.  In a diversity case, the preclusive effect of a judgment of a Minnesota court is determined under Minnesota law. *See Conwed Corp. v. Union Carbide Corp.*, 443 F.3d 1032, 1037-38 (8th Cir. 2006) ("A federal court with jurisdiction by virtue of diversity of citizenship applies state law to questions of issue preclusion.").  Minnesota law requires a party seeking to invoke collateral estoppel to prove four elements:  "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Northwestern Nat'l Life Ins. Co. v. County of Hennepin*, 572 N.W.2d 51, 54 (Minn. 1997) (quoting *Willems v. Comm'r of Pub. Safety*, 333 N.W.2d 619, 621 (Minn. 1983)).

The third and fourth elements — identity of parties and full opportunity to be heard — are not disputed, nor should they be.  The party sought to be estopped is Innsbruck Village, and

Innsbruck Village was a party to the Minnesota action. In that action, Innsbruck Village was given a full and fair opportunity to be heard on the issue of whether the *Miller-Shugart* agreement is enforceable. Innsbruck Village filed its motion seeking leave to serve a supplemental summons and complaint on August 1, 2005. That motion was supported by a memorandum in which Innsbruck Village fully addressed its position that the *Miller-Shugart* agreement is enforceable. Stafford Aff. Ex. I, Apr. 24, 2006. After Judge McShane denied the motion, Innsbruck Village sought permission to move for reconsideration and again argued its position. Stafford Aff. Ex. J, Apr. 24, 2006.

Innsbruck Village nevertheless contends that it is not collaterally estopped from asserting that the *Miller-Shugart* agreement is enforceable because the issue in this action is not the same as the issue determined in the Minnesota action and because the Minnesota action did not produce a final judgment on the merits. Innsbruck Village's arguments will be addressed in turn.

1.  Identity of Issue

The doctrine of collateral estoppel does not preclude a party to a later lawsuit from litigating an issue unless the issue is identical to an issue decided in a prior lawsuit. *Northwestern*, 572 N.W.2d at 54. Innsbruck Village contends that, in this federal lawsuit, the insurers are seeking to estop it from litigating over whether Stock Roofing violated the cooperation clause of its insurance policies in entering the *Miller-Shugart* agreement. Innsbruck Village argues that, because Judge McShane did not explicitly determine that Stock Roofing violated the cooperation clause, the issue decided by Judge McShane is not, in fact, identical to the issue that Innsbruck Village seeks to litigate here.

Innsbruck Village's argument is flawed in two respects. First, its characterization of the insurers' position is too narrow. The insurers take the position that, in this action, Innsbruck Village is estopped from litigating whether the *Miller-Shugart* agreement is enforceable. That is precisely the issue decided by Judge McShane in his November 8, 2005 order:

> Plaintiff seeks to enforce a *Miller-Shugart* settlement it reached with defendant Stock. They cannot do this. *The Miller-Shugart settlement is unenforceable* because the settlement must have taken place during a period of time when the insurer denied all coverage to the insured in order for it to be enforceable against the insurer . . . . Stock's liability insurer never declined to indemnify Stock against liability arising from the Innsbruck suit.

Stafford Aff. Ex. A at 3, Apr. 24, 2006 (emphasis added). When the insurers seek to estop Innsbruck Village on the issue of whether the *Miller-Shugart* settlement is enforceable, and when Judge McShane held that "[t]he *Miller-Shugart* settlement is unenforceable," then the issues are identical.

Second, even if the issue on which the insurers are seeking estoppel is characterized as "whether the *Miller-Shugart* settlement violated the cooperation clause" rather than "whether the *Miller-Shugart* settlement is enforceable," Innsbruck Village would still be estopped. Innsbruck Village makes much of the fact that Judge McShane did not explicitly say that Stock Roofing breached the cooperation clause in the policies issued by the insurers. But that was clearly the basis for his holding.

It will be recalled that, before holding the *Miller-Shugart* agreement unenforceable, Judge McShane found "probable cause" to believe that Innsbruck Village could establish three of the elements necessary to recover: absence of fraud or collusion, reasonableness, and coverage. Logically, then, the only other basis for his determination that the agreement was nevertheless unenforceable was that the cooperation clause was breached. No other reason for

invalidating the *Miller-Shugart* agreement was presented to him, and no other reason is even hinted at by the record.

More importantly, Judge McShane explained exactly why he found the *Miller-Shugart* agreement unenforceable: "The *Miller-Shugart* settlement is unenforceable because the settlement must have taken place during a period of time when the insurer denied all coverage to the insured in order for it to be enforceable against the insurer." Stafford Aff. Ex. A at 3, Apr. 24, 2006. Judge McShane is talking here about the cooperation clause. The reason that, to be valid, a *Miller-Shugart* agreement must take place "during a period of time when the insurer denied all coverage to the insured" is because the agreement would otherwise *violate the cooperation clause. See, e.g.,* *Buysse II*, 481 N.W.2d at 29 ("The danger of using a *Miller-Shugart* settlement when it does not fit is that it exposes the insured to a claim that it has breached the cooperation clause in its policy. If that happens, then the entire policy coverage is voided.").

Finally, the authority discussed and cited by Judge McShane also illuminates the basis of his decision. Judge McShane relied on *Economy First* and other cases addressing when *Miller-Shugart* settlements violate the cooperation clause of an insurance policy. Stafford Aff. Ex. A at 3-4 (citing *Buysse v. Baumann-Furrie & Co.*, 448 N.W.2d 865, 872 (Minn. 1989) (*Buysse I*); *Economy Fire*, 445 N.W.2d at 828 (Simonett, J., dissenting in part); and *Steen*, 442 N.W.2d at 164). Judge McShane would hardly have cited those cases in support of his decision unless he had determined that Stock Roofing violated the cooperation clause in signing a *Miller-Shugart* agreement. In short, it is abundantly clear that Judge McShane held not merely that the *Miller-*

*Shugart* agreement was unenforceable, but that it was unenforceable because it was executed in violation of Stock Roofing's obligations under the cooperation clause in its insurance policies.

2.  Finality of Judgment

Innsbruck Village argues that it is not collaterally estopped by Judge McShane's order because that order was not a final judgment on the merits. Innsbruck Village makes two arguments:

First, Innsbruck Village argues that Judge McShane's order was not a final judgment on the merits because it "lacks a well-reasoned opinion in regards to whether Stock Roofing violated its duty to cooperate." Innsbruck Opp'n Mo. 13. Putting aside the question of whether Judge McShane's opinion was indeed "well-reasoned," Innsbruck Village cites no authority supporting its contention that only orders accompanied by "well-reasoned" opinions have preclusive effect.

Second, Innsbruck Village contends that, because Judge McShane's order is on appeal, it is not a final judgment on the merits and does not have preclusive effect. Innsbruck Village is simply incorrect. In Minnesota, as elsewhere, the pendency of an appeal does not render a judgment "non-final" for purposes of collateral estoppel. *See In re Gibson*, 149 B.R. 562, 576 (Bankr. D. Minn. 1993) (applying Minnesota law).

Minnesota law is clear that collateral estoppel applies to "court orders, as well as judgments, when they are final and subject to appeal." *Balasuriya v. Bemel*, 617 N.W.2d 596, 600 (Minn. Ct. App. 2000) (citing *Nelson v. Auman*, 20 N.W.2d 702, 704 (Minn. 1945)). Minnesota law is equally clear that orders (like Judge McShane's) that deny leave to file a supplemental complaint are final and appealable. *See Sara L. v. Broden*, 507 N.W.2d 24, 26

(Minn. Ct. App. 1993) ("Denial of leave to file a supplemental complaint is appealable under Minn.R.Civ.App.P. 103.03(e) and (g)."); *Ebenezer Soc. v. Dryvit Sys., Inc.*, 453 N.W.2d 545, 548 (Minn. Ct. App. 1990) ("An order denying a motion for leave to file a supplemental complaint in garnishment proceedings is appealable."). Judge McShane's order of November 8, 2005 thus operates to estop Innsbruck Village.

*C.  Mootness*

Judge McShane held that, when Stock Roofing executed the *Miller-Shugart* agreement, Stock Roofing violated the cooperation clause in the policies issued by the insurers, and thus the *Miller-Shugart* agreement is not enforceable against the insurers. Innsbruck Village is collaterally estopped from relitigating that issue in this lawsuit for the reasons described above. Therefore, Innsbruck Village may not seek any relief from the insurers in this action.

What makes this case procedurally awkward is that Innsbruck Village has not *sought* any relief from the insurers in this action. This is a declaratory judgment action filed by the insurers. Innsbruck Village has not filed a counterclaim. The Court cannot grant the insurers summary judgment on Innsbruck Village's claims because Innsbruck Village does not *have* any claims.

It would also be somewhat difficult for the Court to grant the insurers summary judgment on their claims against Innsbruck Village. The insurers' Second Amended Complaint contains five counts. The first four seek declaratory relief against Innsbruck Village; the fifth asserts a claim for subrogation against other parties. Each of the four claims against Innsbruck Village asks the Court to declare something about the scope of coverage under the policies issued to Stock Roofing. For example, Count I asks the Court to "enter a judgment declaring that the Underlying Claims do not constitute 'property damage' arising from 'an occurrence' as defined

-12-

in Plaintiffs' Policies." Second Am. Compl. ¶ 29. In none of the counts do the insurers ask the Court to declare anything about the *Miller-Shugart* agreement. It is thus difficult for the Court to enter judgment for the insurers on any particular count of their complaint.

There is a further impediment to granting the defendants' motion for summary judgment. A determination that Innsbruck Village is collaterally estopped from arguing that the *Miller-Shugart* agreement is enforceable is necessarily a determination that this lawsuit is moot. *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994) ("[When] a federal court can no longer grant effective relief, the case is moot."). Again, the Second Amended Complaint asks the Court to make various declarations about the scope of the coverage afforded to Stock Roofing. But if the *Miller-Shugart* agreement is unenforceable, those coverage issues are moot. Absolutely nothing turns on them because, no matter the scope of coverage, the insurers cannot be held liable.

Article III of the United States Constitution limits the jurisdiction of this Court to actual "Cases" and "Controversies." U.S. Const. Art. III § 2. Because this action is moot, it is no longer a "Case" or "Controversy" for purposes of Article III, and this Court no longer has jurisdiction over it. *See Ark. AFL-CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993). A federal court must dismiss a case over which it does not have subject-matter jurisdiction, even if the parties have not sought dismissal on that ground. *Arnold v. Wood*, 238 F.3d 992, 994 (8th Cir. 2001) ("It is our obligation to notice jurisdictional infirmities, whether the parties notice them or

not.")[2] In sum, because this action is moot, this Court no longer has jurisdiction, and because this Court no longer has jurisdiction, this action must be dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, and based on the fact that this action was rendered moot by the Order and Memorandum Denying Plaintiff's Motion to Serve Supplemental Complaint entered by Judge John Q. McShane on November 8, 2005, IT IS HEREBY ORDERED that:

1. The motion of plaintiffs Transcontinental Insurance Company, Continental Casualty Company, and American Casualty Company of Reading, Pennsylvania for summary judgment [Docket No. 116] is DENIED WITHOUT PREJUDICE;

2. The cross-motion of defendant Innsbruck Village Association [Docket No. 130] is DENIED WITHOUT PREJUDICE; and

---

[2]The United States Supreme Court has written:

> "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. *Ex parte McCardle*, 7 Wall. 506, 514 (1868). "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Great Southern Fire Proof Hotel Co. v. Jones*, [177 U.S. 449, 453 (1900)]. The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884).

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998).

-14-

    3.  This case is DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

    LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 15, 2006                             s/Patrick J. Schiltz
                                                           Patrick J. Schiltz
                                                           United States District Judge